UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: MARY LEE MIMS                               CASE NO. 10-52281-KMS

DEBTOR                                             CHAPTER 13

## MEMORANDUM
## OPINION AND ORDER

This matter came on for hearing ("Hearing") on March 31, 2011, on the Supplemental Objection to Confirmation ("Objection to Confirmation") (Dkt. No. 57) filed by the Chapter 13 Trustee ("Trustee"), and the Response to Trustee's Supplemental Objection to Confirmation ("Response") (Dkt. No. 58) filed by Mary Lee Mims ("Debtor"), the Debtor in the above-styled bankruptcy case. At the Hearing, the Trustee was represented by Phillip Brent Dunnaway, and the Debtor was represented by John Anderson. The Court took under advisement the issue of whether the bankruptcy case and Chapter 13 plan were filed in good faith under 11 U.S.C. § 1325. Having considered the pleadings, the evidence presented at the Hearing, the testimony of the Debtor, and the arguments of counsel, the Court concludes that the filings were in good faith.

### I. Jurisdiction

The Court has jurisdiction over the subject matter and the parties to the proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### II. Factual Background

1.      On September 27, 2010, the Debtor filed a petition for relief under Chapter 13 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Mississippi.

2. The Debtor filed her Chapter 13 Plan ("Plan") (Dkt. No. 8) and her bankruptcy Schedules and Statement of Financial Affairs ("Schedules") (Dkt. No. 5) on October 7, 2010. The Plan proposed payments of $1,254 per month to the Chapter 13 Trustee for a term of 57 months,[1] and proposed a zero percent payment on unsecured claims. The Debtor's Plan proposed payments on secured debts to Met Life First Horizon ("Met Life") on the home mortgage, and to Hancock Bank on a claim in the amount of $40,000 secured by a "Metal Building." Met Life and Hancock Bank were the only secured creditors listed on Debtor's Schedule D. Debtor's original Schedule A identified one parcel of real property – Debtor's homestead. No address was provided for this property.

3. The Trustee filed an objection to confirmation on January 3, 2011 (Dkt. No. 32) based on lack of feasibility under 11 U.S.C. § 1325(a)(6) because the plan payment was insufficient to fund the plan. The Court sustained that objection at a hearing held on January 27, 2011, and an Order Sustaining Trustee's Objection to Confirmation (Dkt. No. 52) was entered on February 1, 2011. The order granted the Trustee time to file an additional objection to confirmation in light of issues that arose at the meeting of creditors conducted on January 21, 2011 ("Meeting of Creditors").

4. On February 21, 2011, the Trustee filed his supplemental Objection to Confirmation asserting: (1) the Debtor's plan and case were not filed in good faith pursuant to 11 U.S.C. § 1325(a)(7) as evidenced by the Debtor's failure to disclose income, expenses and ownership of certain real property;[2] (2) Debtor's retention of the undisclosed real property is not

---

[1] The Plan was later amended in January of 2011 to provide payments of $1,560 per month for a term of 60 months. (Dkt. No. 48).

[2] The Trustee asserts that the Debtor failed to disclose interests in real property located at 4306 Main Street (the "Main Street Property") and 3813 Doris Street (the "Doris Street

2

necessary for an effective reorganization and payments related to the undisclosed property are not reasonably necessary for the effective maintenance and support of the Debtor or her dependents pursuant to 11 U.S.C. § 1325(b); and (3) the Debtor's plan fails the liquidation test under 11 U.S.C. § 1325(a)(4).

5. In her Response, Debtor asserted that the failure to list the Doris Street Property was unintentional and that she and her attorney believed the error had been corrected. The Debtor also noted that the property was openly discussed at the Meeting of Creditors. The Debtor further asserted that although the Main Street Property may not have been listed on Schedule A, the debt obligation on the property was listed on Schedule D. The Debtor explained that both the Main Street Property[3] and the Doris Street Property[4] were utilized by her adult son for income or shelter, but that she would abandon those interests, if necessary, in order to retain her own residence. The Debtor further asserted that the failure to disclose retirement income was unintentional and that bank statements were provided to the Trustee that verified the deposits. The Debtor also pointed out that her Chapter 13 plan payments were current.[5]

---

Property") both in Moss Point, Mississippi. The Trustee further asserts that Debtor failed to disclose retirement income and real property income and expenses.

[3] The Debtor testified that her husband operated a barbeque restaurant at the Main Street Property prior to his death. At the time the Debtor's bankruptcy was filed, her son was operating the restaurant, but it was only open one or two days each week. A motion for relief from the automatic stay regarding the Main Street Property was filed by Hancock Bank; and on March 4, 2011, an order was entered terminating the stay under 11 U.S.C. § 362. (Dkt No. 63).

[4] With regard to the Doris Street Property, the Debtor testified that she inherited the property when her mother passed away in 2006. The Debtor did not know the value of the property and had been continuing to make payments of $313 per month on a mortgage that her mother had obtained before she died. At the time that the bankruptcy was filed, certain utilities were paid by Debtor's son because he was living on the property.

[5] At the Hearing, the Debtor's attorney noted that the Debtor has made over $9,000 in payments to the Chapter 13 Trustee.

3

6. At the Hearing, counsel for the Chapter 13 Trustee called the Debtor to testify on the issue of good faith. The Debtor confirmed that she lives at 4319 McLeod Street, Moss Point, Mississippi, and that the property is the homestead that is identified on Schedule A.[6] When questioned by counsel for the Trustee regarding other parcels of real property in which she had an ownership interest at the time she filed her bankruptcy petition and why they were not listed in her Schedules, the Debtor identified the Doris Street Property and the Main Street Property, and testified that she had given the information regarding both of these properties to her bankruptcy attorney prior to filing the instant case.

7. According to Debtor, the bankruptcy was filed to prevent foreclosure of her homestead. The Debtor's attorney explained that he had met with the Debtor in his office over a weekend due to the emergency nature of the filing, and that he and the Debtor had reviewed a rough draft of the Schedules and noticed that certain properties were not listed. Changes were handwritten on the Schedules and left for a secretary to correct. However, the secretary inadvertently failed to make the corrections before filing the Schedules.

8. In addition to the Debtor's testimony at the Hearing, the Trustee presented the Debtor's recorded testimony from the Meeting of Creditors. It was clear from the recorded testimony that the Debtor fully disclosed the Doris Street Property, the Main Street Property and her retirement income.

---

[6] Schedule A did not specifically identify Debtor's homestead by address. However, the McLeod Street address was listed as the Debtor's address on the petition and in the original and amended Chapter 13 Plans.

### III.  Discussion

A. Good Faith Requirement

Pursuant to section 1325 of the Bankruptcy Code, good faith is a requirement for confirmation of a debtor's Chapter 13 plan.  Specifically, section 1325(a)(7), cited by the Trustee in his Objection to Confirmation, provides that the court is to confirm the plan if, "the action of the debtor in filing the <u>petition</u> was in good faith."  11 U.S.C. § 1325(a)(7) (emphases added). Additionally, section 1325(a)(3) provides that a plan is to be confirmed if, "the <u>plan</u> has been proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1325(a)(3) (emphasis added).

"No comprehensive definition of good faith exists for purposes of § 1325 . . . [c]ourts must define good faith on a case by case basis."  *In re Meador,* No. 06-80509, 2008 WL 243673, at *5 (Bankr. S.D. Tex. Jan. 25, 2008).  S*ee Sullivan v. Solimini (In re Sullivan),* 326 B.R. 204, 212 (B.A.P. 1st Cir. 2005) (good faith is fact intensive determination and analysis is conducted on case by case basis).  It is the debtor's burden to establish good faith under section 1325.  *See In re Owsley,* 384 B.R. 739, 751 (Bankr. N.D.Tex. 2008); *Hardin v. Caldwell (In re Caldwell),* 895 F.2d 1123, 1126 (6th Cir. 1990); *In re Aprea,* 368 B.R. 558, 567 (Bankr. E.D. Tex. 2007); s*ee also Elmwood Dev. Co. v. Gen. Elec. Pension Trust (In re Elwood Dev. Co.),* 964 F.2d 508, 510 (5th Cir. 1992) (in context of chapter 11, court stated that good faith standard protects integrity of bankruptcy courts and prohibits debtor's misuse of process where motive is to delay creditors or achieve reprehensible purpose).

The United States Court of Appeals for the Fifth Circuit has determined that a court should consider the totality of circumstances in determining whether a plan has been filed in good faith:  "We emphasized in *Public Finance Corp. v. Freeman* that the good-faith inquiry

5

under § 1325(a)(3) requires a careful examination of the totality of the circumstances surrounding the debtor's Chapter 13 filing." *In re Chaffin,* 836 F.2d 215, 217 (5th Cir. 1988) (citing *Public Finance Corp. v. Freeman,* 712 F. 2d 219, 221 (5th Cir. 1983)). The totality of circumstances may also be utilized in the context of the good faith requirement set forth in § 1325(a)(7).[7] Specific criteria that may be considered in an evaluation of good faith include:

> (1) [T]he reasonableness of the proposed repayment plan; (2) whether the plan shows an attempt to abuse the spirit of the Bankruptcy Code; (3) whether the debtor genuinely intends to effectuate the plan; (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities; (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay; (6) whether the plan reflects the debtor's ability to pay; and (7) whether a creditor has objected to the plan. *In re Ramirez,* 204 F.3d 595 (5th Cir.2000). *See also In re Stanley,* 224 Fed. Appx. 343 (5th Cir.2007), and cases cited therein.

*In re Randecker,* No. 09-80598, 2011 WL 182887, at *2 (Bankr. S.D. Tex. Jan. 20, 2011). S*ee also In re Cuevas*, No. 08-51337, 2009 WL 1515041, at *4-5 (Bankr. S.D. Miss. May 28, 2009). Additionally, the Court may consider, "whether there are any deficiencies or inaccuracies in the debtor's schedules or plan that might amount to an attempt to mislead the court." *In re Meador*, 2008 WL 24673, at *5; *see In re Russell*, 348 B.R. 441, 448 (Bankr. S.D. Tex. 2004).

---

[7] The court in *In re Davis*, No. 09-42865, 2011 WL 1302222 (Bankr. E.D. Tex. Mar. 31, 2011), recently discussed the totality of circumstances requirements in the context of both §1325(a)(3) and § 1325(a)(7):

> To confirm a chapter 13 plan, the bankruptcy court must find, among other elements, that "the plan has been proposed in good faith." 11 U.S.C. § 1325(a)(3). The bankruptcy court also must find, among other elements, "the action of the debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(7). Good faith-bad faith in this context is not an esoteric legal concept that only lawyers and judges can understand. The question is whether the totality of the circumstances indicates that the plan is unreasonable or that the debtor is attempting to abuse the spirit of the Code. *Matter of Chaffin,* 816 F.2d 1070, 1073 (5th Cir.1987).

*Id.,* at *13; *see also In re Aprea,* 368 B.R. at 565-66 (addressing totality of circumstances test in context of requirement in 11 U.S.C. § 1325(a)(7)).

B. Analysis

As pointed out in the Trustee's Objection to Confirmation, the Debtor failed to clearly set forth in her Schedules her ownership interests in certain properties, including the home she inherited from her mother and the commercial property that had been used by family members to operate a restaurant, as well as certain income and expenses. Omissions or misrepresentations of assets are significant matters that may indicate a lack of good faith on the part of a debtor in the filing of a petition or proposed plan.[8] However, after considering the evidence presented in this case and the Debtor's testimony at the Hearing as well as the recorded testimony from the Meeting of Creditors, the Court is convinced that the totality of circumstances reflects that the inaccuracies were inadvertent and were not intentional. The Debtor voluntarily disclosed and openly discussed her assets at the Meeting of Creditors. Her testimony at the Hearing was consistent with her earlier testimony at the Meeting of Creditors.

Any inaccuracy in the portrayal of the Debtor's assets, income and/or expenses in the Schedules was, in the Court's view, caused by her attorney's failure to make needed corrections, rather than any action by the Debtor to conceal assets or information. The Court finds the Debtor's testimony that she disclosed the Main Street Property and the Doris Street Property to her attorney at the time the Schedules were initially prepared to be credible, and further finds that the failure of the Debtor's attorney to accurately list properties in the Schedules was inadvertent and unintentional. S*ee In re Roberts,* 339 B.R. 807, 812 (Bankr. M.D. Ga. 2006) (omissions and inaccuracies in schedules did not prevent confirmation for lack of good faith where they occurred due to inadvertence by debtor's attorney, where debtor gained no advantage by omissions and

---

[8] It is the debtor's burden to accurately complete bankruptcy schedules. *See Faden v. Ins. Co. of N. Am. (In re Faden)*, 96 F. 3d 792, 795 (5th Cir. 1996) (citing *Rion v. Spivey (In re Springer),* 127 B.R. 702 (Bankr. M.D. Fla. 1991)).

inaccuracies, and where debtor may not have understood legal implications of transactions with family members, specifically ownership interest in her mother's home); *In re Beck,* 309 B.R. 340, 351 (Bankr. N.D. Cal. 2004) (evidence did not show that debtor attempted to mislead with inaccurate schedules where he furnished attorney with information and believed chapter 13 documents had been completed properly); *Condon v. Brady (In re Condon)*, 358 B.R. 317, 328-29 (B.A.P. 6th Cir. 2007) (in evaluating good faith the court found inaccuracies in schedules to be troubling, but found no evidence that misstatements or omissions were an attempt by debtor to mislead where inaccuracies were caused by debtor's attorney).[9]

### IV. Conclusion

Examination of the totality of circumstances indicates that the Debtor's main purpose in filing the instant bankruptcy is to save her home, even if she is required to abandon other properties. The Debtor has shown her intent to effectuate the plan by making payments to the

---

[9] Similarly, in the context of actions to deny discharge under section 727, courts have found no intent to defraud in cases where debtors freely corrected inaccuracies and revealed information at later examinations or the meeting of creditors. *See Klingler v. Hosler (In re Hosler)*, 309 B.R. 540, 550 (Bankr. D. Ill. 2004) (although there were omissions and inaccuracies in debtor's schedules, no intent to deceive was shown where corrections were made by debtor voluntarily at meeting of creditors and court found debtor to be credible); *Merena v. Merena (In re Merena)*, 413 B.R. 792, 816 (Bankr. D. Mont. 2009) (debtor's inadvertent failure to list assets on her schedules did not rise to level of fraudulent false oath even though debtor did not disclose many items at meeting of creditors and did not promptly amend); *Nat'l Am. Ins. Co. v. Guajardo (In re Guajardo)*, 215 B.R. 739, 741-42 (Bankr. W.D. Ark. 1997) (debtor's false oath was not made with fraudulent intent where he voluntarily offered corrections and explanations later in examination); *Baker v. Mereshian (In re Mereshian)*, 200 B.R. 342, 347 (B.A.P. 9th Cir. 1996) (there was no intent to defraud by debtor where he failed to list certain transactions but revealed them at meeting of creditors); *First Sec. Bank of Helena v. Hirengen (In re Hirengen)*, 112 B.R. 382, 385-86 (Bankr. D. Mont. 1989) (discharge was not denied where schedules contained inaccuracies but where it was apparent in testimony in creditor's meeting that debtor did not intend concealment of assets but was unsophisticated and poorly counseled in proper completion of bankruptcy papers); *Northeast Alliance Fed. Credit Union v. Garcia (In re Garcia)*, 260 B.R. 622, 631 (Bankr. D. Conn. 2001) (when evaluating knowledge of a false statement a court may consider debtor's education, business experience and reliance on counsel).

Trustee. Additionally, it is apparent that although the Debtor fully disclosed information regarding her assets to her attorney, certain information was not accurately listed in Schedules prepared by counsel. The Debtor and her attorney have provided an explanation of how information was unintentionally omitted from her Schedules; the attorney's staff made a clerical error. During the course of these proceedings, the Debtor has not acted in a manner consistent with concealing assets, but rather has voluntarily disclosed information regarding her assets and finances. Finally, nothing in the record indicates that the Debtor would have gained an advantage by the omissions or inaccuracies in the Schedules. Therefore, considering the totality of the circumstances, the Court finds that the Debtor has acted in good faith in filing her petition and her Chapter 13 Plan, and that the misrepresentations or omissions contained in the Debtor's Schedules are not sufficient to establish a lack of good faith. Accordingly, the Trustee's Objection to Confirmation on the grounds of lack of good faith is overruled.[10]

SO ORDERED.

_____
Katharine M. Samson
United States Bankruptcy Judge
Dated: May 6, 2011

---

[10] In addition to requesting denial of confirmation, the Trustee requested at the Hearing that the Debtor's case be dismissed. The Court concludes that dismissal of the case is not appropriate under the circumstances. In *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 375, 127 S.Ct. 1105, 1112 (2007), the Court noted that:

> Limiting dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation. 11 U.S.C. § 1325(a)(3); see *In re Love,* 957 F.2d, at 1356 ("Because dismissal is harsh ... the bankruptcy court should be more reluctant to dismiss a petition ... for lack of good faith than to reject a plan for lack of good faith under Section 1325(a)").

*Id.* at 375, 1112 n.1.